UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE LAMARR HARVEY,       Case No.: 23-10049
       Plaintiff,
v.       F. Kay Behm
     United States District Judge

CHARLES JAMSEN, *et al.*,
       Defendants.       Curtis Ivy, Jr.
_____/       United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 23, 35, 43)**

## I.     PROCEDURAL HISTORY

Plaintiff Wayne Harvey filed this civil rights matter without the assistance of

counsel on January 9, 2023, against medical staff at the Michigan Department of

Corrections' ("MDOC").  (ECF No. 1).  Defendants Jamsen, Akins, and Zigler

have moved for summary judgment on the issue of exhaustion of administrative

remedies.  (ECF Nos. 23, 35, 43).  Plaintiff filed letters or responses to those

motions.  (ECF Nos. 37, 40, 46).  This case was referred to the undersigned for all

pretrial matters on April 10, 2023.  (ECF No. 18).

For the reasons below, the undersigned **RECOMMENDS** that the motions

for summary judgment be **GRANTED**.

## II.     BACKGROUND

A.    <u>Complaint Allegations</u>

According to Plaintiff, he has been in the custody of MDOC since 1985.  He suffers from chronic medical conditions and illnesses.  He alleges that his conditions, including arthritis, anemia, compressed disks in his spine, and blindness, are not being treated. (ECF No. 1, PageID.8-12).

There are a few specific instances of inadequate or lack of medical treatment which form the basis of the complaint.  On January 7, 2021, Defendants Aiken[1] and Jane Doe approached Plaintiff to insert a catheter.  Plaintiff protested, stating that he did not need a catheter and in the past, catheters caused infections or other complications.  Still, these Defendant persisted and attempted to insert the catheter.  During the procedure, Plaintiff cried out in pain and asked them to stop.  (*Id.* at PageID.12-14).  Plaintiff began to bleed while Aiken worked.  Defendants Bashir and Sigler[2] then entered Plaintiff's cell to assist.  They too dismissed Plaintiff's pleas to stop the procedure, even though he continued to bleed and cry out in pain.  The Defendants eventually stopped trying to insert the catheter and sent Plaintiff to the hospital.  (*Id.* at PageID.14-15).  A hospital doctor prescribed pain medication that included Norco.  When Plaintiff returned to the prison on January 9, 2021, Defendant Bashir changed his medication plan to reduce the amount of Norco he

---

[1] Plaintiff spelled this Defendant's last name "Akins," but she spells is "Aiken."  The undersigned will spell this Defendant's name as she does.

[2] The Defendant spells her last name "Sigler," the undersigned will follow suit.

would get daily.  (*Id.* at PageID.18).  Plaintiff complained of increased pain, but was not given any extra medication.

Aside from the catheter issue, Plaintiff also alleges certain chronic conditions were not treated after January 7, 2021: (1) he was not given pain medication following his February 2021 brain surgery; (2) Bashir took Plaintiff off blood thinners on May 27, 2021, then Plaintiff was diagnosed with severe blood clots in his legs in June 2021; and (3) he is not receiving any treatment following his June 22, 2021, cervical spine surgery, which caused paralysis on the left side of his body.  (*Id.* at PageID.20-23).  He further alleges that from January 2021 to the date of his complaint, he complained daily about pain and discomfort, but was not given medical treatment for his issues.  He also states that he was approved for a traction bed and power wheelchair, but Defendant Jamsen would not provide either.  (*Id.* at pageID.23-24).

Plaintiff sues for violations of the Eighth Amendment, the Americans with Disabilities Act, the Rehabilitation Act, and Michigan tort law.

B.   <u>Instant Motions for Summary Judgment</u>

Sigler, the first Defendant to move for summary judgment on the basis of failure to exhaust administrative remedies, argues for judgment because Plaintiff did not pursue any grievances through the three-step process since 2018.  (ECF No. 23).  She also argues that any claims related to medical care before January 9,

2020, should be dismissed as outside the statute of limitations. The undersigned notes, however, that there are no such claims in the complaint. The allegations begin January 7, 2021, within the statute of limitations.

Defendant Jamsen similarly argues that Plaintiff failed to exhaust his administrative remedies on any claims against him because Plaintiff did not pursue a grievance through all three steps of the administrative process. (ECF No. 35).

Defendant Aiken adopts the arguments in Sigler's motion for summary judgment. (ECF No. 43).

In his responses (including letters the undersigned construes as responses to the motions), Plaintiff contends that he did exhaust the administrative process, or at least would have but MDOC delayed in giving him a step two form or responding to a grievance. He appears to also argue that MDOC manipulated documents to make it seem that Plaintiff did not exhaust his claims, but he does not explain this position. (ECF No. 37, PageID.211). Included with his first response at ECF No. 37 is a letter dated April 19, 2022, in which he states he was given a grievance form in March 2022 that was already marked expired. (*Id.* at PageID.214). Another letter, dated July 20, 2022, is about receiving a Step II grievance form "five days past its [expiration] date." (*Id.* at PageID.213). In ECF No. 40, he asserts that the grievance coordinator sent him his Step I grievance untimely, delaying his response. The undersigned interprets this statement to mean that the

Step I response was late, which caused his Step II appeal to be late.  (ECF No. 40, PageID.225).  Attached to his response is a July 18, 2022, memorandum from the MDOC grievance coordinator to a deputy informing the deputy that they are the most appropriate staff member to address the grievance.  (*Id.* at PageID.228).  It is unclear what this grievance is about.  Also attached is a July 20, 2022, Step I grievance from Plaintiff in which he states that he received a Step II appeal form five days past the due date.  (*Id.* at PageID.229).  There is also a letter to the grievance coordinator asking for copies of several Step I grievances he filed in 2022.  (*Id.* at PageID.284).

Attached to his response at ECF No. 46 is a Step I grievance response form dated October 18, 2021.  It states that Plaintiff filed a grievance about a catheter that was placed on September 17, 2021.  He stated that the procedure was conducted after he refused and caused pain and trauma.  (ECF No. 46, PageID.266).  The investigation summary reveals that there was no catheter procedure within a week of the stated date, so there was no documentation to support the grievance.  (*Id.*).  There is also a Step I grievance form with an incident date of August 18, 2021, in which Plaintiff requests a new doctor because Defendant Bashir physically assaulted him.  (*Id.* at PageID.273).

Plaintiff's letters and responses are not verified, no affidavits were attached to support his assertions.

## III.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

B.   Exhaustion under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his or her claim.  *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").  Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .").  That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.*  As a result, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.   <u>Grievance Procedures at MDOC</u>

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows.  First, the inmate must seek to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.   (ECF 23-2, PageID.121, at ¶ Q).  If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form.  (*Id.*).  If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (*Id.* at PageID.123, ¶ DD).  Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (*Id.* at PageID.124, ¶ HH).  The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at

455 ("A grievant must undertake all steps of the MDOC process for his grievance

to be considered fully exhausted.").

    D.   <u>Analysis</u>

It is uncontested that Plaintiff did not appeal a grievance related to his claims

through the three-step grievance process.  (*See* ECF No. 23-3).  This failure

precludes his claims from moving forward against these Defendants.  As shown

below, Plaintiff did not come forward with admissible evidence to raise a question

of material fact and defeat the motions for summary judgment.

Defendant Jamsen points out that the grievances attached to the responses do

not relate to the conduct alleged against him about denial of a traction bed or

wheelchair.  There is no evidence Plaintiff filed a timely grievance on this issue

and grieved through all three steps.  Jamsen's motion should be granted.

None of the grievances attached to the responses or letters relate to the

allegations in the complaint.  One grievance comes close—Plaintiff's grievance

dated August 18, 2021, in which he requests a new doctor because Defendant

Bashir physically assaulted him on August 18, 2021.  (ECF No. 46, PageID.273).

But Plaintiff did not allege an assault in August 2021 by either of the Defendants.

His allegations that would have occurred during that month relate to lack of

medical care for his ailments, not an assault.  So that grievance, even if it were

taken through all three steps, would not serve to exhaust remedies on any of the

claims against these Defendants.  The same is true with a grievance it appears he filed during September 2021, about a catheter issue.  Plaintiff did not allege in his complaint any issues about placement of a catheter in September 2021.  To the extent that this was intended to be a grievance about the January 7, 2021, catheter placement, it is untimely.  As explained above, a Step I grievance must be filed within five days of the incident.

Jamsen also notes that the list of Step I grievances Plaintiff requested via letter are all from 2022, based on the grievance identifier numbers.  There is no claim against Jamsen for conduct in 2022, so again, Jamsen's motion should be granted.  But Plaintiff did allege that he was not receiving adequate medical care from January 7, 2021 to the date of the complaint in January 2023 from some Defendants.  Plaintiff did not attach those grievances to a response or letter, so the conduct alleged within them is unknown.  Even if he grieved issues related to the complaint, however, he did not take any of those grievances through all three steps, so they do not serve to exhaust administrative remedies.

Finally, Plaintiff's assertion that he could not complete the grievance process because the prison was untimely in responding at Step I or Step II suggests an argument that the grievance process was unavailable.[3]  The Supreme Court

---

[3] The undersigned notes that none of Plaintiff's responses or letters contain an affidavit or some sworn statement that his asserts are true under penalty of perjury.  The Court cannot consider a response brief or unauthenticated documents as evidence to defeat a motion for

articulated three scenarios under which a prison's grievance procedures may be

rendered unavailable:

> As relevant here, there are three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief.   First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.  Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it.  And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake*, 578 U.S. 1850, 1853-54 (2016).  A prisoner need not exhaust

administrative remedies when grievance procedures are unavailable.

The prison's untimely response to a grievance does not implicate either of

these scenarios.  Moreover, the MDOC grievance procedure expressly states that

an inmate must appeal to the next step if they are unsatisfied with the response *or*

*they do not receive a response* within ten days after the due date of the response.  If

Plaintiff did not get a timely response to a Step I or Step II grievance, he was still

obligated to appeal to the next step to preserve his claim.  According to the MDOC

Grievance Report, he failed to complete the grievance process.

---

summary judgment.  The undersigned addresses Plaintiff's assertions and evidence here giving
Plaintiff the benefit of the doubt.  As demonstrated, however, his arguments and evidence do not
defeat the motions for summary judgment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motions for summary judgment (ECF Nos. 23, 35, 43) be **GRANTED** and that Defendants Aiken, Jamsen, and Sigler be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 19, 2023

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on December 19, 2023.

s/Sara Krause
Case Manager
(810) 341-7850